UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHARLES McALLISTER,

<table>
<tr><td>                        Plaintiff,</td><td><b>REPORT AND<br><u>RECOMMENDATION</u></b></td></tr>
<tr><td>            -against-</td><td>CV 18-4318 (GRB) (AYS)</td></tr>
</table>

THE COUNTY OF SUFFOLK, THE CHIEF OF
POLICE JOHN DOE, SERGEANT JOHN DOE,
PO JACK BALAGUERA, PO ANDREW HOPE, PO
JOHN DOE #1, PO JOHN DOE #2, In their official
and Individual Capacity,

                        Defendants.
------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

Before the Court, on referral from the Honorable Gary R. Brown, is Defendants' motion

for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Proceeding pro se,

Plaintiff opposes the motion. For the following reasons, this Court respectfully recommends that

Defendants' motion be granted in part and denied in part.

BACKGROUND

The relevant facts, as set forth below, are taken from Defendants' Local Civil Rule 56.1

Statement, as well as the documents offered by Defendants in support of their motion. Plaintiff

failed to file a counter-statement to Defendants' 56.1 Statement, as required by Local Civil Rule

56.1(b). Pursuant to Local Civil Rule 56.1(c), where the party opposing summary judgment fails

to file the required Local Civil Rule 56.1 counter-statement, "[e]ach numbered paragraph in the

statement of material facts set forth in the statement required to be served by the moving party

will be deemed to be admitted for purposes of the motion" for summary judgment. Local Civ. R.

56.1(c). The Court finds Defendants' Rule 56.1 Statement to be proper since it contains citations

to admissible evidence to support each asserted material fact, see Giannullo v. City of New York,

322 F.3d 139, 140 (2d Cir. 2003), and, based upon Plaintiff's failure to comply with Local Civil Rule 56.1, deems the facts set forth in Defendants' 56.1 Statement admitted. See Nassar Family Irrevocable Trust v. United States, Nos. 13 Civ. 5680, 13 Civ. 8174, 2016 WL 5793737, at *1 n.2 (S.D.N.Y. Sept. 30, 2016) ("Because Nassar failed to file a response [to Defendant's Rule 56.1 Statement], all facts set forth in the Government's statement are deemed admitted in deciding the instant motion."); Luizzi v. Pro Transport Inc., No. 02 CV 5388, 2009 WL 252076, at *2 (E.D.N.Y. Feb. 2, 2009) ("Where the party opposing a motion for summary judgment fails to submit a proper counter-statement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts.").

On January 11, 2016, in Wyandanch, New York, non-party Suffolk County Police Officers Edward Angelo ("Officer Angelo") and John Maloney ("Officer Maloney") arrested the Plaintiff, Charles McAllister ("Plaintiff" or "McAllister"), pursuant to a New York State Division of Parole Warrant and two Bench Warrants issued by Nassau County for the crimes of petit larceny and possession of a forged instrument. (Def. Local Civ. R. 56.1 Statement ("Def. 56.1") ¶¶ 1-3.) Officer Maloney also arrested Plaintiff on a charge of false personation. (Id. ¶ 4.)

On March 15, 2018, Plaintiff's driver's license was suspended pending prosecution. (Id. ¶ 5.) On May 7, 2018, while his license was suspended, Plaintiff was driving in Wyandanch, New York, when, after following his vehicle for approximately two blocks, Defendants Police Officer Andrew Hope ("Officer Hope") and Police Officer Jack Balaguera ("Officer Balaguera") pulled him over. (Id. ¶ 6.) During that incident, Officer Hope arrested Plaintiff for aggravated unlicensed operation of a motor vehicle in the third degree under New York Vehicle and Traffic

Law § 511, a misdemeanor, for driving with a suspended license, and for unlawful possession of marijuana under New York Penal Law § 221.05. (Id. ¶¶ 7, 9.) In addition, Officer Balaguera arrested Plaintiff for criminal possession of a controlled substance in the third degree, under New York Penal Law § 220.03, for possession of crack cocaine. (Id. ¶ 8.) Finally, Officer Hope issued Plaintiff traffic summonses for making an improper or unsafe turn under New York Vehicle and Traffic Law § 1163 and for unlicensed operation of a motor vehicle under Section 509(1) of that same statute. (Id. ¶ 10.)

On April 29, 2019, Plaintiff pled guilty before Suffolk County First District Court to a violation of New York Vehicle and Traffic Law § 1202(b)(2), which was a reduced charge from the violation of Section 1163 for which he was arrested on May 7, 2018. (Id. ¶ 12.) The charge under Section 509 of that same statute was dismissed in satisfaction of Plaintiff's guilty plea under Section 1202. (Id.) Plaintiff's driver's license was restored on May 15, 2018. (Id. ¶ 11.)

Plaintiff commenced the within action, pro se, on July 30, 2018, alleging claims for false arrest, excessive force, and municipal liability, pursuant to 42 U.S.C. § 1983. (See generally Compl., Docket Entry ("DE") [1].) On January 4, 2019, Defendants filed an Answer to Plaintiff's Complaint on behalf of Suffolk County (the "County") and Officer Balaguera. (DE [14].) Officer Hope's Answer was filed on March 6, 2019. (DE [21].) Discovery in this action was protracted and repeatedly frustrated by Plaintiff's failure to appear for several court conferences and refusal, at times, to participate in discovery. At Plaintiff's request, this Court scheduled a settlement conference in 2024 and appointed pro bono counsel to assist Plaintiff with that conference. (DE [85].) However, that conference was subsequently cancelled upon receipt of the parties' confidential settlement statements, which made clear to the Court that any such

conference would not be fruitful. (Order of Shields, M.J., dated Sept. 17, 2024.) That Order also permitted the parties to file dispositive motions.[1]

Defendants filed a pre-motion conference request in anticipation of making a motion for summary judgment on October 17, 2024. (DE [92].) After largely failing to conduct any discovery during the almost five years since this case commenced, Plaintiff filed a letter motion that same day, requesting to reopen and extend discovery. That request was denied, and Plaintiff was afforded until November 28, 2024 to file any request for a pre-motion conference in anticipation of making a dispositive motion and to oppose Defendants' pre-motion conference request. (Order of Shields, M.J., dated October 28, 2024.) Plaintiff failed to file any request to make a dispositive motion; nor did he oppose Defendants' request for a pre-motion conference. The Court, thereafter, set a briefing schedule for Defendants' motion for summary judgment. The Court now turns to the merits of that motion.

## DISCUSSION

### I.      Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[1] While Plaintiff's opposition to Defendants' motion for summary judgment is correct that a prior Order of this Court stated that Defendants were not permitted to file any motion for summary judgment because the deadline for doing so had passed, (Pl. Opp'n to Def. Mot. for Summary J. ¶ 3), the Court sua sponte reconsidered that Order and permitted Defendants to move for summary judgment when settlement discussions failed.

242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

"Pro se litigants are afforded a special solicitude" before the Court, which includes "reading their filings 'to raise the strongest arguments they suggest.'" DiDonna v. Maas, No. 22-CV-05417, 2024 WL 5202239, at *4 (S.D.N.Y. Dec. 23, 2024) (quoting Mortimer v. City of New York, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018)). While it is "through this lens of leniency towards pro se litigants" that the Court must consider Defendants' motion for summary judgment against Plaintiff, Adams v. George, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020), "this status does not . . . excuse a pro se litigant from making the showing required to defeat summary judgment; he or she must offer more than 'bald assertions, completely unsupported by evidence' to overcome the motion." DiDonna, 2024 WL 5202239, at *4 (quoting Wisdom v. Loiodice, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020)) (additional citations omitted).

II.    False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . is substantially

the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); Folk v. City of New York, 243 F. Supp. 3d 363, 371 (E.D.N.Y. 2017) (quoting Weyant, 101 F.3d at 852). Under New York law, a plaintiff alleging false arrest must demonstrate: (1) "the defendant intended to confine" the plaintiff; (2) "the plaintiff was conscious of the confinement;" (3) "the plaintiff did not consent to the confinement;" and, (4) "the confinement was not otherwise privileged." Broughton v. State, 37 N.Y.2d 451, 456 (1975); see also Folk, 243 F. Supp. 3d at 371 (same). An arrest is privileged if it was "based on probable cause." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Broughton, 373 N.Y.2d at 458). Accordingly, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, . . . whether that action is brought under state law or under § 1983." Weyant, 101 F.3d at 852 (citations and quotation marks omitted); see also Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (same).

"In general, probable cause to arrest exists when officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852 (citing cases). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)). The arresting officer "need only possess enough information to convince a reasonable person that the arrestee committed an offense, . . . and if he does, then he is immune from a subsequent claim of false arrest." Brown v. City of New York, 201 F. Supp. 3d 328, 331 (E.D.N.Y. 2016) (citations omitted).

"In a lawsuit claiming false arrest, '[t]he burden of establishing the absence of probable cause rests on the plaintiff.'" Lin v. City of New York, No. 14 Civ. 9994, 2016 WL 7439362, at *7 (S.D.N.Y. Dec. 21, 2016) (quoting Berry v. Marchinkowski, 137 F. Supp. 3d 495, 524 (S.D.N.Y. 2015)). On summary judgment, the existence of probable cause may be determined as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852.

Here, it is undisputed that there were three outstanding warrants for Plaintiff's arrest on January 11, 2016 – one from the New York Division of Parole and two from Nassau County. "[A]n arrest pursuant to a facially valid arrest warrant is presumed to be made with probable cause . . . ." Jorgensen v. County of Suffolk, 558 F. Supp. 3d 51, 61 (E.D.N.Y. 2021) (quoting Martinetti v. Town of New Hartford, 12 Fed. App'x 29, 32 (2d Cir. 2001)) (alteration in original). Accordingly, "[w]hen an arrest is made pursuant to a warrant, a plaintiff cannot make the essential showing that defendant confined him without justification; thus, there can be no claim for false arrest under § 1983." Reich v. City of New York, No. 19-CV-6491, 2021 WL 11628271, at *5 (E.D.N.Y. July 23, 2021) (quoting Smith v. City of New York, No. 13-CV-2395, 2014 WL 4904557, at *4 (E.D.N.Y. Sept. 30, 2014)) (alteration in original).

With respect to his arrest on May 7, 2018, it is undisputed that Officers Hope and Balaguera observed Plaintiff committing one of the offenses for which he was arrested. As Plaintiff testified at his deposition, he observed Officers Hope and Balaguera following him for approximately two blocks before they pulled him over. (McAllister Dep. 91, annexed to Def. Mot. for Summary J. at Ex. F.) Plaintiff was thereafter arrested for a number of offenses, including a violation of New York Vehicle and Traffic Law § 511 for driving with a suspended license. Plaintiff was further issued traffic summonses for making an improper or unsafe turn

under New York Vehicle and Traffic Law § 1163 and unlicensed operation of motor vehicle under Section 509(1) of that statute.

There is no question that Plaintiff's driver's license was suspended at the time of his arrest on May 7, 2018. It is also undisputed that Plaintiff pled guilty to a reduced charge than those for which he was arrested, which disposed of the offenses for which he was arrested. "[A] plaintiff's plea of guilty establishes probable cause and bars a claim for false arrest." Wilson v. Suffolk County Executive, No. 25-CV-5175, 2025 WL 2855373, at *4 (E.D.N.Y. Oct. 8, 2025) (citing Roundtree v. City of New York, 778 F. Supp. 614, 619 (E.D.N.Y. Nov. 20, 1991)); see also Madera v. Kings County Criminal Term Supreme Court of New York, No. 23-CV-4402, 2023 WL 4763254, at *3 (E.D.N.Y. July 26, 2023) (finding that plaintiff's guilty plea "precludes a finding in his favor on any potential false arrest claims"). "[E]ven if to a lessor included offense under a charged violation," a guilty plea is "fatal to a false arrest claim." Tretola v. County of Nassau, 14 F. Supp. 3d 58, 68-69 (E.D.N.Y. 2014).

Moreover, while Plaintiff was arrested for multiple offenses on May 7, 2018, it is irrelevant to the probable cause analysis whether there were warrants for arrest or subsequent admissions of guilt for each offense for which he was arrested. See Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (stating that when considering a claim for false arrest, "it is not relevant whether probable cause existed with respect to each individual charge"). Rather, in determining whether there was probable cause to arrest in connection with a claim for false arrest, the focus is on the "validity of the arrest, and not on the validity of each charge." Id. (emphasis in original). Accordingly, "a plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported

any individual charge identified by the arresting officer at the time of arrest." Id. (citing Devenpeck, 543 U.S. at 152-53).

Based on the foregoing, Plaintiff's false arrest claim fails as a matter of law since there was probable cause to arrest him on both January 11, 2016 and May 7, 2018. This Court therefore recommends that Defendants' motion for summary judgment be granted with respect to Plaintiff's false arrest claim.

II.     Excessive Force

Excessive force claims brought pursuant to Section 1983 are "judged under the Fourth Amendment's 'objective reasonableness' standard." Terranova v. New York, 676 F.3d 305, 308 (2d Cir. 2012) (quoting Brosseau v. Haugen, 543 U.S. 194, 197 (2004)). Under this standard, the determinative question is whether the officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Spinelli v. City of New York, 579 F.3d 160, 167 (2d Cir. 2009) (citation omitted).

"Under the law, police are not permitted to use any degree of force in all instances – in some circumstances, no use of force is reasonable because none is required." Weather v. City of Mount Vernon, No. 08 Civ. 192, 2011 WL 1046165, at *9 (S.D.N.Y. Mar. 22, 2011), aff'd, 474 Fed. App'x 821 (2d Cir. 2012). It is "well established that law enforcement officers violate the Fourth Amendment if the amount of force they use is 'objectively unreasonable' in light of the facts and circumstances confronting them." Rogoz v. City of Hartford, 796 F.3d 236, 246 (2d Cir. 2015) (citation omitted). However, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. (quoting Graham v. Connor, 490 U.S. 386, 396-97

(1989)). "The 'reasonableness' of the amount of force used thus 'must be judged from the perspective of a reasonable officer on the scene . . . at the moment' the force is used." Rogoz, 796 F.3d at 246-47 (quoting Graham, 490 U.S. at 396). "In sum, the 'standard' to be applied in determining whether 'the amount of force' used exceeded the amount that was 'necessary' in the particular circumstances is 'reasonableness at the moment.'" Rogoz, 796 F.3d at 247 (quoting Graham, 490 U.S. at 396, 397). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." Graham, 490 U.S. at 396 (citation omitted).

"[T]o sustain a claim for excessive force, the plaintiff must establish through admissible evidence that the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable and, consequently, that 'the amount of force used was more than de minim[i]s.'" Rodriguez v. County of Nassau, No. 18-CV-03845, 2023 WL 266706, at *9 (E.D.N.Y. Mar. 28, 2023) (quoting Rincon v. City of New York, No. 03-CV-8276, 2005 WL 646080, at *4 (S.D.N.Y. Mar. 21, 2005)) (alteration in original). A plaintiff "generally must prove he sustained some injury to prevail on an excessive force claim." Hicks v. Village of Ossining, No. 12-CV-6874, 2016 WL 345582, at *4 (S.D.N.Y. Jan. 27, 2016). "Allegations of de minimis injuries are insufficient to trigger the protections afforded by the Fourth Amendment." Rodriguez, 2023 WL 266706, at *9 (citing cases).

Here, Plaintiff does not submit any medical records to support his claim of excessive force. In fact, Plaintiff's opposition to the within motion consists of nothing more than a two-page "declaration," which fails to even address this claim. It is black-letter law that "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Maher v.

Alliance Mortgage Banking Corp., 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) quotation omitted); see also Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition papers did not address defendant's motion for summary judgment on this claim, the claim is deemed abandoned . . . .").

Notwithstanding this procedural failure on Plaintiff's part, as set forth above, the Court is required to evaluate his excessive force claim to raise the strongest argument possible. Plaintiff's Complaint alleges that when Officers Hope and Balaguera "attempted to handcuff [him], the defendants pulled his left arm one way and the right arm another way – far apart when Plaintiff attempted to pull his arms together." (Compl. ¶ 17.) The Complaint further alleges that Officer Balaguera "punched Plaintiff on the left side of his forehead causing swell[ing]" and that Officer Hope "punched Plaintiff in his right side rib cage." (Id.) Finally, Plaintiff alleges that Officers Balaguera and Hope "together pulled Plaintiff[']s arms and caused the [hand]cuffs to lock extremely tight that Plaintiff was screaming profusely from the pain from his cuffed wrists that cause[d] physical injuries and bruises to open wounds on both left and right wrists." (Id.) In moving for summary judgment, Defendants do not deny the use of force upon Plaintiff; rather, the focus of their argument is that Plaintiff's injuries were de minimis.[2]

While Plaintiff offers no evidentiary support for his allegations of excessive force, such as medical records – a fact that may ultimately weigh against him in the minds of the jury in assessing whether the force used was excessive – this failure is not fatal to his claim because

---

[2] Defendants also argue that Plaintiff has "persistently failed to provide evidence that he sustained a physical injury on May 7, 2018 by refusing to execute authorizations for the release of the medical records which he asserts document his claim of injury." (Def. Mem. of Law in Supp. of Summary J. 4.) However, the docket sheet in this action clearly reflects that, during a conference held before this Court on August 27, 2019, Plaintiff signed an authorization for his medical records, which was provided to Defendants' counsel. (DE 34].)

"[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987). In fact, "[c]ourts in this Circuit routinely deny motions for summary judgment on excessive force claims where plaintiffs have alleged even lesser amounts of force and similarly did not allege to have suffered severe injuries." John v. City of New York, 406 F. Supp. 3d 240 (E.D.N.Y. 2017) (collecting cases).

"At the summary judgment stage, because of the 'fact-specific nature' of the objective reasonableness inquiry, 'granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable.'" Routier v. O'Hara, No. 08-CV-0266, 2013 WL 3777100, at *6 (E.D.N.Y. July 17, 2013) (quoting Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004)). This Court cannot make that conclusion in light of the allegations in Plaintiff's Complaint. Where, as here, "the resolution of an issue rests largely on "[a]ssessments of credibility and choices between conflicting version[s] of the events," the issue is a matter for the jury to decide, not the court on summary judgment. Routier, 2013 WL 3777100, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)).

Based on the foregoing, this Court finds that there are issues of fact precluding summary judgment with respect to Plaintiff's excessive force claim. Accordingly, the Court respectfully recommends that Defendants' motion be denied as to that claim.

III.    Municipal Liability

Pursuant to the Supreme Court's decision in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Id. at 694. Rather, a municipal entity may

only be held liable where injury results from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. Therefore, to state a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell, 436 U.S. at 690-91). "The plaintiff must show a 'direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.'" Mazzone v. Town of Southampton, 283 F. Supp. 3d 38, 61 (E.D.N.Y. 2017) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" Davis v. City of New York, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002). "Although there is no heightened pleading requirement for complaints alleging municipal liability under Section 1983, a complaint does not suffice if it tenders naked assertion[s] devoid of further factual enhancement." McLennon v. City of New York, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016) (quoting Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015)) (additional citation and internal quotation marks omitted) (alteration in original).

To demonstrate a policy, custom, or practice for purposes of municipal liability, "a plaintiff need not identify an expressly adopted rule." Mazzone, 283 F. Supp. 3d at 61. Rather, a plaintiff may establish the existence of a municipal policy or custom by demonstrating any one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by governmental officials responsible for establishing the municipal policies that

caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Jones v. Bay Shore Union Free Sch. Dist., 170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016), aff'd, 666 F. App'x 92 (2d Cir. 2016) (quoting Brandon v. City of New York, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

Here, the evidence presented fails to substantiate any of the four Monell categories. Indeed, the only item before the Court with respect to municipal liability is a single allegation in the Complaint stating that "Defendant County of Suffolk use[s] practices and customs created by police for enforcement of racial profiling against African American men. (Compl. ¶ 25.) Such a conclusory allegation is nothing more than a formulaic recitation of the elements of a Monell claim, without any factual support to substantiate it. Nor has Plaintiff offered any additional evidence in opposing summary judgment to support his municipal liability claim. At this stage of the litigation, Plaintiff must present actual evidence in support of his claim for municipal liability in order to take it to trial. See Vail v. City of New York, 68 F. Supp. 3d 412, 431 (S.D.N.Y. 2014) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction, but either way Plaintiff must allege it with factual specificity, rather than by bare and conclusory statements.").

Based on the foregoing, this Court respectfully recommends that Defendants' motion for summary judgment be granted with respect to Plaintiff's claim for municipal liability.

## RECOMMENDATION

For the foregoing reasons, the Court respectfully recommends that Defendants' motion for summary judgment be granted in part and denied in part. Specifically, the Court recommends

that the motion be granted with respect to Plaintiff's claims for false arrest and municipal liability and denied with respect to his claim for excessive force.

OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs Defendants' counsel to serve a copy of this Report and Recommendation, by overnight mail and first-class mail, to Plaintiff at his last known address(es), and to file proof of service on ECF, by January 22, 2026. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days may preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED:**

Dated: Central Islip, New York
       January 16, 2026                                    /s/       Anne. Y. Shields
                                                           ANNE Y. SHIELDS
                                                           United States Magistrate Judge